WOODRUFF, Appellant, v. MUNSON, Respondent.

(226 N. W. 263.)

(File No. 6438. Opinion filed June 27, 1929.)

*Johnson & Simons,* of Sioux Falls, for Appellant.
*Danforth & Barron,* of Sioux Falls, for Respondent.

BROWN, J. From a judgment on a directed verdict at the close of plaintiff's evidence, and an order. denying a new trial, plaintiff appeals. Evidence on his behalf was to the effect that defendant was connected with the city health department of Sioux Falls, and desired to have a social public health survey of the city; that on May 31, 1926, he called on plaintiff, who had some training in that line of work, and engaged him to go to work on the survey; that plaintiff commenced work next day, and worked altogether approximately 57 days. A day or two after commencing the work, plaintiff, at defendant's request, went with him to interview the mayor and solicit his aid and co-operation in the work. The mayor said that the city had no funds available for the work, and suggested that they see the city commission at their meeting next Thursday. On Thursday defendant was too busy to go before the commission, but told plaintiff to go, which he did, and explained the nature of the survey, and referred to the previous interview with the mayor. The commission stated that they had no funds to pay for such work, but would give any aid they could by way of stenographer help. Plaintiff reported the result of this interview to defendant, who said, "We will go ahead anyway; your work can't go uncompensated," and stated further that he would go before the various city clubs and see if they would help finance it. Plaintiff's father testified that, at the time plaintiff was engaged, on May 31, defendant said: "We want to get it out of the city commission if we can, but I will see that he gets compensation for his work." It is conceded that plaintiff was not employed by the city or any club or organization, and that no one is liable to him for pay for his work, if defendant is not.

The ground of the motion for a directed verdict was that the evidence showed "* * * nothing more than an attempt on the part of the defendant, if any, to guaranty the payment of these services, which were being rendered for the defendant and if the alleged contract if made as claimed by the plaintiff by the testimony given, is void under the Statute of Frauds, not being in writing * * * and it would be an attempt on the part of the defendant to guaranty the debt, default or miscarriage of another by a contract not in writing."

Throughout respondent's argument, the contract claimed by plaintiff is referred to as a "collateral," and not an original promise, and is therefore void as not being in writing. What it is collateral to is nowhere stated in respondent's argument, perhaps for the obvious reason that it cannot be stated. If plaintiff was not employed by defendant, it is very certain that he was not employed by any one else, and therefore defendant's promise, if any was made, could not be collateral, there being nothing that it could be collateral to. "In order to bring an oral promise to answer for the debt, default, or miscarriage of another within the prohibition of the statute it is essential that there should be a binding and subsisting liability or obligation on the part of a third person to the promisee which such oral promise undertakes to discharge, and to which it is collateral. The person for whom the promise is made must be liable to the person to whom it is made, for if there is no liability on his part to the promisee there would be no debt or default of another to answer for, and the promise would necessarily be an original and independent promise not within the statute." 27 C. J. 130.

Plaintiff testified that defendant "told me he wanted me to work for him and I commenced the next day, June 1st. He said he would see that I was taken care of, the first day after I was employed." His father testified that Munson said, "I will see that he gets compensation for his work." It is true that it may be inferred from the evidence that defendant hoped to get the money with which to pay plaintiff either from the city or from the various city clubs that he might interest in the work, but that did not make his promise a promise to answer for the debt, default, or miscarriage of another. His promise to see that plaintiff was compensated was his own individual promise, and, if it was made as plaintiff's testimony tends to show, the jury would have been warranted in finding a verdict for plaintiff.

Lakeman v. Mountstephen, L. R., 7 H. L. 17; 6 Eng. Rul. Cas. 285, was a case in all respects similar to the case at bar. In that case defendant was chairman of a board of health for which plaintiff had constructed a main sewer, and was about to remove his working materials, when defendant inquired what objection he had to making connections between certain houses and the sewer, to which plaintiff replied, "None, if you or the Board will order the

work or become responsible for the payment." Defendant answered, "Gon on and do the work and I will see you paid." The court of queen's bench directed a nonsuit, which, on appeal to the exchequer chamber, was reversed. An appeal was taken to the House of Lords, which unanimously affirmed the decision of the exchequer chamber, holding that the direction of a nonsuit was error. In the report of the case in 6 Eng. Rul. Cas. at page 296, in the American notes by Irving Browne, formerly editor of the American Reports and the Albany Law Journal, it is said that the principle decided in the case is the law in this country.

Respondent further contends that on the theory of an original contract there was no consideration; that the work was of such a nature that it could be of no personal benefit to defendant. But consideration may be either a benefit to the promisor or a prejudice suffered by the promisee. The work done by plaintiff was a sufficient consideration for a promise by defendant to pay for it, whether the work was beneficial to defendant or not. If benefit to the promisor were an essential element of consideration for a promise, many an unfortunate client would be able to avoid payment of his lawyer's fee.

Judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.